Chancellor Harper
delivered the opinion of the Court.
The second and sixth grounds of the motion, which relate to the points chiefly considered by this Chancellor below, have been abandoned.
With respect to the first ground, we do not think it necessary *5901 determine, whether the answer overrules the plea ; because we -I are of opinion, that there was a sufficient memorandum in writing to take the agreement out of the statute of frauds, the auctioneer being regarded as the agent of both parties. It is agreed, with respect to goods sold at auction, he must be so regarded ; but some of the earlier cases, determined that this could not be extended to lands. — Stansfield v. Johnson, 1 Esp. Ni. Pri. 101; Buckmaster v. Harrop, 1 Ves 341. "But Lord Eldon expressed a different opinion, in Coles v. Trecothick, 9 Ves. 234, which has been followed ever since — by Lord Erskine in the same case, of Buckmaster v. Harrop, 13 Ves. 456, and by Sir Win. *451 Grant, in Kenneys v. Proctor, 3 Ves. & B. 57. He states that he should himself have been of a different opinion, but was governed by the decisions of the Court of Common Pleas, in Emmerson v. Heelis, 2 Taunt. 38, and White v. Proctor, 4 Taunt, 209, to the same effect with the equity cases cited. The same thing has been decided in New York. —M’Combe v. Wright, 4 Johns. Ch. Rep. 659. I, myself, expressed a different opinion, in a case decided by me as Chancellor; but upon its being carried up to the Court of Appeal, that Court overruled my opinion; so that the question may be regarded as settled.
Then an objection was taken to the sufficiency of the memorandum, as not setting forth sufficiently the description of the property, and the tferms of sale. I do not understand the objection to apply to the entry in the auctioneer’s book, but to the pencil memorandum made on the land at the moment of sale, which it was thought constituted the true memorandum. But this is contrary to the universal understanding. The entry in the auctioneer’s book was made as early as practicable. If a memorandum of sales be made by a shopkeeper, in pencil, or on a slate, and afterwards entered in the day book, the latter is always regarded as the original entry.
Then it was argued, that having contracted and dealt with Rowland, the plaintiffs have no recourse against Wiley. But it is perfectly well settled that if a party contracts with an agent, not knowing him to be agent, and afterwards discovers the principal, he may afterwards enforce the contract against the principal. See Paterson v. Gandasequi, 15 East, 62, and Railton v. Hodges, 4 Taunt. 576, &c. There is a difference if a party contracts with an agent, knowing of the principal. There, if after he knows the ^'principal, he continues to deal ex- r*Kq-| elusively with the agent, and gives the credit to him, the principal <- will be discharged. Addison v. Gandasqui, 4 Taunt. 574. Here, however, the plaintiffs dealt with the principal from the time they discovered him. The case of Kemeys v. Proctor, seems to have been in this respect precisely like the present. The auctioneer entered the sale as made to the agent, and the contract was enforced against the principal. It is clear that the auctioneer’s authority need not be in writing. — See Lord Eldon in Coles v. Trecothick.
The third ground was not urged in argument.
The fourth ground involves matter depending on testimony, with respect to which we have no reason to distrust the Chancellor’s conclusion.
The fifth ground was not urged, and seems to be without foundation.
Chancellors Johnson and Johnston, concurred.